IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DBSI, INC., et al.,<br>    Debtors, | Chapter 11<br>Case No. 08-12687 (PJW)<br>Jointly Administered |
| JAMES R. ZAZZALI, et al.,<br><br>    Appellants,<br>v.<br><br>WAVETRONIX LLC, et al.,<br><br>    Appellees. | C.A. No. 12-cv-1211 (GMS)<br>Adv. Pro. No. 10-55963 (PJW) |
| In re:<br><br>DBSI, INC., et al.,<br>    Debtors, | Chapter 11<br>Case No. 08-12687 (PJW)<br>Jointly Administered |
| WAVETRONIX LLC, et al.,<br><br>    Appellants,<br><br>v.<br><br>CONRAD MYERS, as trustee of the DBSI Liquidating Trust,<br>    Appellee. | C.A. Nos. 12-cv-1210 (GMS)<br>           12-cv-1215 (GMS)<br>           12-cv-1216 (GMS)<br>           12-cv-1217 (GMS)<br>           13-cv-0976 (GMS)<br><br>Adv. Pro. No. 10-55592 (PJW) |
| JAMES R. ZAZZALI,<br><br>    Plaintiff,<br><br>v.<br><br>ADVISORY GROUP EQUITY SERVICES LTD., et al.,<br>    Defendants. | C.A. No. 11-cv-475 (GMS) |

| | |
|---|---|
| JAMES R. ZAZZALI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEWAAY FINANCIAL NETWORK LLC, et al., ) <br> ) <br> Defendants. ) <br> ) | C.A. No. 11-cv-625 (GMS) |
| JAMES R. ZAZZALI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AFA FINANCIAL GROUP PARENT ) <br> CORP., et al., ) <br> ) <br> Defendants. ) <br> ) | C.A. No. 11-cv-744 (GMS) |
| JAMES R. ZAZZALI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALEXANDER PARTNERS LLC, et al., ) <br> ) <br> Defendants. ) <br> ) | C.A. No. 12-cv-828 (GMS) |

## MEMORANDUM OPINION

I. **INTRODUCTION**

The above-captioned cases encompass matters related to bankruptcy proceedings and securities litigation stemming from an alleged Ponzi scheme perpetrated by the Directors of

various Diversified Business Services & Investments, Inc. ("DBSI") entities.[1] On September 26, 2012, the moving defendants, Wavetronix LLC, David Arnold, Linda Arnold, and Michael Jensen, filed a Motion to Withdraw Reference. (12-cv-1210 (GMS) and 12-cv-1211 (GMS), D.I. 1 and 2.) On October 15, 2012, the moving defendants filed a Motion to Transfer to the District of Idaho pursuant to 28 U.S.C. § 1404(a). (12-cv-1210 (GMS), D.I. 4; 12-cv-1211 (GMS), D.I. 4; 12-cv-1215 (GMS), D.I. 22; and 13-cv-976 (GMS), D.I. 16.) Presently before the court are the moving defendants' Motions to Withdraw the Reference and the moving defendants' Motions to Transfer to the District of Idaho.[2] For the reasons that follow, the court will grant the moving defendants' Motions to Withdraw the Reference[3] and Motions to Transfer.[4]

---

[1] On April 14, 2014, a federal jury in the District of Idaho returned guilty verdicts against Douglas L. Swenson and three other DBSI principles on multiple fraud charges. *See* U.S. Attorney's Office, *Jury Convicts DBSI Principals of Fraud*, FBI.GOV, http://www.fbi.gov/saltlakecity/press-releases/2014/jury-convicts-dbsi-principals-of-fraud (Apr. 14, 2014). Chief Judge Pechman instructed the parties that the civil matters related to the criminal prosecution of Swenson would be stayed pending the outcome of the criminal trial and would proceed expeditiously thereafter. (C.A. No. 12-cv-1215 (GMS), D.I. 25 at 2.)

[2] Because the court's Order affects parties in a number of cases, the court will refer to the related actions as the "Securities" cases and the "Bankruptcy" cases. The Bankruptcy cases include 12-cv-1210 (GMS); 12-cv-1211 (GMS); 12-cv-1215 (GMS); 12-cv-1216 (GMS); 12-cv-1217 (GMS); and 13-cv-976 (GMS). The Securities cases include 11-cv-475 (GMS); 11-cv-625 (GMS); 11-cv-744 (GMS); and 12-cv-828 (GMS).

[3] Because the motion to transfer stems from an appeal from a bankruptcy proceeding, the court must first address the pending Motion to Withdraw Reference before proceeding to the transfer analysis.

The district court has original jurisdiction over all bankruptcy cases and retains the power to withdraw, in whole or in part, any core or non-core matter referred to the bankruptcy court, either on its own motion or on the motion of any party, "for cause shown." 28 U.S.C. § 157(d). The requirement that cause be shown "creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court, unless rebutted by contravening policy.'" *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec.*, 106 B.R. 367, 371 (D. Del. 1989) (citations omitted). In addition, the Third Circuit has set forth five factors that a district court should consider in determining whether cause exists for discretionary withdrawal. These factors include: (1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering economical use of debtor/creditor resources; (4) expediting the bankruptcy process; and (5) timing of the request for withdrawal. *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). When an action involves consideration of both bankruptcy and nonbankruptcy federal laws affecting interstate commerce, withdrawal of the reference is mandatory. 28 U.S.C. § 157(d). Courts in this District have interpreted the mandatory withdrawal provision of § 157(d) to apply only where the action requires a "substantial and material" consideration of a federal statute outside the Bankruptcy Code. *See In re Continental Airlines*, 138 B.R. 442, 444-46 (D. Del. 1992).

On August 15, 2012, the Bankruptcy court denied Wavetronix's Bankruptcy Venue Motion. (Adv. Pro. No. 10-55963, D.I. 245.) On August 15, 2012, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") issued a letter ruling determining that the Adversary Proceedings are "core" proceedings, which order Wavetronix has also appealed. (*See* Adv. Proc. No. 10-55963, D.I. 244.) The court recognizes and affords great weight to the determination of the Bankruptcy Court. However, the court finds that Wavetronix has met its burden to show withdrawal of the reference and transfer of venue is warranted here. Here, the court is

## II. BACKGROUND

This action stems, in part, from the November 2008 bankruptcy filing of ninety-three DBSI entities. (C.A. No. 12-cv-828 (GMS), D.I. 1 at ¶ 9.) On September 11, 2009, Bankruptcy Court approved the appointment of James Zazzali ("Zazzali") as the Chapter 11 Trustee for the DBSI entities. (*Id.* ¶ 10.) On October 26, 2010, the bankruptcy court issued its Findings of Facts, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation. (*Id.* ¶ 12.) Zazzali serves as trustee for two of the four trusts—the PAT and the Estate Litigation Trust—that were formed pursuant to the confirmation order. (*Id.* ¶ 13.) Conrad Myers ("Myers") serves as trustee to the two other trusts—the DBSI Liquidating Trust and the DBSI Real Estate Liquidating Trust. Myers and Zazzali (collectively, "the Trustees"), are responsible for liquidating the assets of the trusts for the benefit of the trusts' beneficiaries. (*See*

---

persuaded that the action involves consideration of both bankruptcy and nonbankruptcy federal laws affecting interstate commerce. Specifically, various affirmative defenses set forth in Wavetronix's amended complaint implicate the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act.

Even if the court were not to find mandatory withdrawal necessary in this case, the court would nonetheless withdraw the case for "cause" as provided for in § 157(d). Permissive withdrawal for cause requires, "considerations of the nature of the proceedings (i.e. core or non-core proceedings) and judicial economy." *In re Del. & Hudson Ry. Co.*, 122 B.R. 887 (D. Del. 1991). The court refrains from assessing whether the proceedings are core or non-core and, rather, concludes that there is overwhelming justification for withdrawal of the matter on the basis of judicial economy. Withdraw of the Reference and transfer will provide an efficient consolidation of the related cases moving forward in the District of Idaho. As discussed more fully in the transfer analysis, *infra* Section IV(b)(ii)(1), judicial economy strongly suggests that these cases be transferred.

[4] The court notes that the defendants in the related Securities cases have not filed Motions to Transfer nor have they attempted to join the Motions pending in the Bankruptcy actions. However, the court has assessed the underlying Securities matters and, as more fully discussed *infra* Part II, has determined that a transfer of all of the related cases would best serve the interests of convenience and justice. Although the Securities defendants did not file motions to transfer in their respective actions, the court, by this Memorandum Opinion and accompanying Order, is, *sua sponte*, transferring these actions to the District of Idaho. As in *Beacon Navigation GmbH v. Crysler Group L.L.C.*, the court recognizes that it has limited, if any, authority to transfer the non-moving defendants under 28 U.S.C. § 1404(a)-(b), which states that, "[u]pon motion, consent or stipulation of all parties," an action may be transferred. *See* No. 11-922 (GMS), 2013 WL 1163943, at *1 n.4 (D. Del. Mar. 20, 2013). Instead, the court transfers 11-cv-475 (GMS), 11-cv-625 (GMS), 11-cv-744 (GMS) and 12-cv-828 (GMS) to the District of Idaho under its inherent authority to manage its own docket. The court finds the moving defendants' arguments in support of transferring these matters to be persuasive for the reasons detailed in this Memorandum Opinion. The court does not transfer these actions with the intent to act extra-judicially or to usurp the parties' rights. In addition, Bankruptcy case numbers 12-cv-1216 (GMS) and 12-cv-1217 do not have pending motions to Transfer, but rather Motions to Consolidate. (*See* D.I. 8 in each respective civil action.) Appellees have only limited objections to the Motions to Consolidate the previously mentioned cases with case numbers 12-cv-1210 (GMS) and 12-cv-1211 (GMS); as such the court will consider these cases consolidated for purposes of the instant Order.

C.A. No. 12-cv-1211 (GMS), D.I. 5 at 2-3.)

On November 5, 2010, Zazzali filed a Complaint in the District of Delaware alleging that the DBSI parties operated a vast criminal enterprise in violation of state and federal racketeering laws.[5] Zazzali maintains that the DBSI parties defrauded investors through operation of a classic Ponzi scheme, moving cash among various DBSI entities.

On December 3, 2010, Wavetronix, Dr. David V. Arnold, Linda S. Arnold, and Dr. Michael Jensen (collectively, the "moving defendants") filed the "Dissociation Proceeding" in the Bankruptcy Court seeking, among other things, a declaration that investments made by Stellar Technologies, LLC ("Stellar")[6] in Wavetronix represented equity rather than debt when made, a declaration that certain promissory notes are void and unenforceable, and a declaration as to the dissociated nature of Stellar's (now the Liquidating Trust's) interest in Wavetronix, an Idaho limited liability company. (Adv. Pro. No. 10-55592 (PJW), D.I. 127 at 6.)

On December 7, 2010, the Trustees commenced the "Note Proceeding" against Wavetronix, seeking to enforce certain promissory notes. (Adv. Pro. No. 10-55592 (PJW), D.I. 127 at 7.) On April 18, 2011, Wavetronix filed an Answer to the first amended complaint. (*Id.* at 8.) Wavetronix asserts that it lacked the detailed information necessary to specifically plea RICO-based affirmative defenses when filing its Answer to the amended complaint, and thus raised general affirmative defenses of fraud, racketeering activities, and criminal enterprises. (*Id.*)

On July 14, 2011, Zazzali instituted actions against over 200 named defendants and 500

---

[5] *See Zazzali v. Swenson*, No. 10-950-LPS (D. Del.) This case has since been transferred to the District of Idaho. *See also supra* note 1.

[6] Pursuant to the terms of the Plan and Confirmation Order, Stellar was substantively consolidated as a debtor in the bankruptcy case effective as of November 10, 2008. (Adv. Pro. No. 10-55592 (PJW); D.I. at 9.) Shortly thereafter, Stellar's interest in Wavetronix was assigned to the Liquidating Trust pursuant to the terms of the Confirmation Order. (*Id.*)

"John Doe" defendants in the Civil Action Number 12-828 (GMS) action alone. Zazzali alleged in his 245-paragraph Complaint, (1) violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5, (2) violations of §20(a) of the Exchange Act, (3) breaches of contract, (4) common law fraud, (5) negligence, and (6) breaches of fiduciary duties. (C.A. No. 12-cv-828 (GMS), D.I. 420 at 1.)

## III. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The provision affords district courts "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3rd Cir. 1995). In this assessment, the court undertakes a two-step inquiry to determine whether a motion to transfer should be granted. First, the court must establish whether the action is one that could have originally been brought in the proposed transferee forum. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3rd Cir. 1970). Second, the court must then weigh whether transfer would best serve the interests of convenience and justice. *See Jumara*, 55 F.3d at 879. The burden rests on the defendant to show that transfer is appropriate at each step, *id.* (citing *Shutte*, 431 F.2d at 22), and, "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail" *Shutte*, 431 F.3d at 25 (citing *Owatonna Mfg. Co. v. Melore Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)).

## IV. DISCUSSION

Consistent with the two-step analysis detailed above, the court will first address the question of whether this suit might have been brought in the proposed transferee forum, the U.S. District Court for the District of Idaho. The court will then assess whether the balance of convenience favors transfer, consistent with the various private and public factors the Third Circuit outlined as the appropriate examination in *Jumara v. State Farm Insurance Co.*[7]

### a. The Propriety of the Transferee Forum

Under 28 U.S.C. § 1404(a), the proposed transferee forum must be one in which the action might have originally been brought. Accordingly, the court may only grant the moving defendants' motion to transfer to the District of Idaho if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction in the action. *See* 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

The parties to the Bankruptcy matters do not dispute that the present action could have been brought in the District of Idaho.[8] Wavetronix is an Idaho limited liability company with its principal place of business in Utah. (C.A. No. 12-cv-1211, D.I. 5 at 15.) DBSI entities are all Idaho entities. *See Zazzali v. Swenson*, 852 F. Supp. 2d 438, 443 n.6 (D. Del. 2012).

"It is well established that . . . venue is proper as to all defendants involved in . . . [an] alleged securities fraud even if some of those defendants were not directly involved in the venue-supporting act or transaction within the district." *In re Towner Petroleum Co. Secs. Litig.*, 1986 WL 290, at *12 (E.D. Pa. June 20, 1986). The court construes the various Complaints filed in the Securities actions as alleging that defendants were involved in the venue-supporting act or transaction by way of the alleged fraudulent marketing and sale of DBSI Securities. As such,

---

[7] 55 F.3d 873, 883 (3d Cir. 1995).
[8] *See* Adv. Pro. No. 10-55592-PJW, D.I. 139.

6

venue in the District of Idaho is appropriate under the co-conspirator theory of venue and proceeds to the second step of the transfer analysis.[9] *See id.* at 16 n.13.

### b. The *Jumara* Analysis

The court next must consider whether transfer to the District of Idaho would serve the interests of convenience and justice. In the Third Circuit, this requires an individualized analysis, accounting for the various private and public interests guarded by § 1404(a). *See Jumara*, 55 F.3d at 879. The court, rather than applying any "definitive formula," considers each of these "*Jumara* factors" on a case-by-case basis. *See id.* The private interests may include:

> Plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The public interests may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted). Importantly, the *Jumara* analysis is not limited to these

---

[9] In a Memorandum dated September 25, 2013, the court granted-in-part and denied-in-part various Motions to Dismiss in one of the Securities actions on the basis of improper venue determining that venue was proper in the District of Delaware under 28 U.S.C. § 1391(b). (*See* C.A. No. 12-cv-828 (GMS), D.I. 420, D.I. 421.) A number of the defendants in the Securities matters have filed renewed Motions to Dismiss for Improper Venue. (*See id.*, D.I. 468.) Due to the large number of named defendants it would be impracticable for the court to analyze each of the defendants' connection to the District of Idaho individually. Further, in circumstances as this, where the conduct of the investors is so closely intertwined with the conduct of the defendants, the court finds it appropriate to employ a more "holistic" approach. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) ("[W]e look not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim. In addition, we do not focus on the actions of one party. Rather, our approach takes a "holistic view of the acts underlying a claim." (internal quotations omitted)). In recognition that DBSI had its principal place of business in Idaho and presumably completed the majority of its transactions in that location, the court finds that this analysis would also support venue in the District of Idaho.

7

explicitly enumerated factors, and no one factor is dispositive. *See id.* at 879.

### i. Private interest factors

#### 1. Plaintiff's forum preference

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Id.* at 879.

Trustees are correct that, under the § 1404(a) analysis, the plaintiff's choice of forum is typically afforded heightened deference, particularly where the plaintiff has chosen to litigate on its home turf. *See AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616 GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012); *see also Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" (citation omitted)). However, as the court recently explained in *Smart Audio Technologies, LLC v. Apple, Inc.*, the deference afforded to a plaintiff's choice of forum is shown primarily by placing the initial burden on the movant to demonstrate that the balance of convenience "strongly" favors transfer. No. 12-134-GMS, 2012 WL 5865742, at *4 (D. Del. Nov. 16, 2012). Specifically, as an individual *Jumara* factor, a plaintiff's forum preference receives enhanced weight only where it has chosen to file suit on its home turf or can identify a rational and legitimate reason for litigating in Delaware. *See id.* In fact, "[t]he court . . . recognizes that, when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than . . . paramount consideration." *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2012 WL 105323, at *3 (D. Del. Jan. 7 2013); *see also In re Link_A_Media*, 662 F.3d at 1223 (using the term "home forum" to refer to the jurisdiction in which a party is physically located and

noting that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference").

Trustees have clearly manifested their preference for Delaware as a forum by filing suit here.[10] Nevertheless, Delaware is not the "home turf" for Trustees. *See Zazzali v. Swenson*, 852 F. Supp. 2d 438, 449 (D. Del. 2012). In view of the foregoing, the court concludes that the Trustees forum selection is entitled to some degree of heightened deference, but not to "paramount consideration." *See Smart Audio Techs.*, 2012 WL 5865742, at *6; *AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616-GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012).

### 2. Defendant's forum preference

The second private interest factor is the defendant's choice of forum. *Jumara*, 55 F.3d at 879. Under Third Circuit law, defendants' preference for an alternative forum is not given the same weight as plaintiff's preference. Defendants prefer an alternative forum, the District of Idaho. Defendants assert that material witnesses are located in Idaho and that the ongoing proceedings in Idaho related to this matter will provide for judicial efficiency. The court finds the defendants' preference to be a legitimate and rational reason for seeking an alternative forum. *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012).

### 3. Location of operative events

The third private interest factor the court must consider is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879.

---

[10] The court notes that Wavetronix chose to file a declaratory judgment action in Delaware such that Delaware was not only the Trustees' choice of venue, but Wavetronix's as well. Wavetronix asserts that since the filing of its Answer to Amended Complaint and its assertion of the initial affirmative defenses, discovery has been conducted through which Wavetronix has "obtained additional facts more fully defining the scope of its claims and affirmative defenses." (Adv. Pro. No. 10-55592 (PJW), D.I. 125 at 11.) Wavetronix further avers that it has discovered substantial claims and defenses as a result of the discovery including facts supporting and supplementing its affirmative defenses under, among other things, the federal RICO statute. The court is satisfied that Wavetronix has met its burden to show a change in circumstances since the filing of its suit. *See James v. Daley & Lewis*, 406 F. Supp. 645, 648 (D. Del. 1976) ("[B]efore a court will grant a plaintiff's motion for a change of venue, he must first show a change in circumstances since the filing of his suit.").

Trustees assert that the Complaint at issue arose in Chapter 11 cases pending before the bankruptcy court in Delaware and was brought by the Trustees of a Delaware Trust. Defendants argue that all of the relevant events, including the formation of Wavetronix, Stellar's investment in Wavetronix, and the DBSI Parties' subsequent use of Wavetronix to further various criminal enterprises all occurred in Idaho and Utah. (Adv. Pro. No. 10-55963 (PJW), D.I. 218 at 14.) The court does not fail to appreciate that the bankruptcy matters have been ongoing for a number of years in the District of Delaware Bankruptcy Court. However, the court looks more broadly at where the location of operative events for the DBSI actions took place. *See Astro-Med, Inc.*, 591 F.3d at 12. In doing so, the court notes that DBSI was headquartered in and operated out of Idaho and that the Trustees concede the "underlying Notes may have been entered into in Idaho." (Adv. Pro. No. 10-55592 (PJW), D.I. 139 at 22.) Further, the criminal prosecution of Swenson and other DBSI directors took place in the District of Idaho.

The court concludes that events giving rise to this litigation occurred both in Idaho and Delaware. Thus, on balance, this factor is neutral.

### 4. Convenience of the parties

The court must also determine whether the proposed transferee forum would be more convenient for the parties. *See Jumara*, 55 F.3d at 879. In this assessment, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitel*, 2013 WL 1856457, at *4 (quoting *Smart Audio Tech.*, 2012 WL 5865742, at *7 (internal quotation omitted)). To this end,

10

the court is tasked with assessing the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879.

Wavetronix is an Idaho limited liability company with its principal place of business in Utah. Wavetronix and the other moving defendants argue that they would be substantially burdened if forced to litigate the Note Proceeding more than 2,000 miles away in Delaware. (Adv. Pro. No. 10-55963 (PJW), D.I. 218 at 14.) Trustees argue that they will incur additional expenses if required to travel to Idaho to litigate the case. (Adv. Pro. No. 10-55592 (PJW), D.I. 139 at 22.)

In light of the sheer number of named defendants in the Securities cases, many of whom are located in western States including Idaho and are proceeding *pro se*, in addition to the corporate situs of the Bankruptcy defendants, the court finds that it is more inconvenient for defendants to litigate in Delaware than it is for the Trustees to travel to Idaho.[11]

In sum, this factor weighs in favor of transfer.

### 5. Convenience of witnesses

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879.

Trustees argue that the moving defendants have not met their burden to provide sufficiently precise information about the witnesses they intend to call. (Adv. Pro. No. 10-55592 (PJW), D.I. 139 at 24.) Moving defendants assert that the majority of known relevant non-party witnesses are located in Idaho. Further, moving defendants note that the non-party witnesses

---

[11] Trustees argue that transfer of the action to Idaho would be the more expensive and "least expeditious path to resolving this litigation." (Adv. Pro. No. 10-55592 (PJW), D.I. 139 at 22.) The court disagrees with Trustees. A stay is currently in effect in the related proceedings in the District of Idaho. The stay was expected to be lifted at the close of the criminal sentencing in the Swenson criminal proceeding. Chief Judge Pechman has stated that the cases will move along "expeditiously" at the close of the DBSI directors' criminal trials. *See supra* note 1. As such, the court is confident that a consolidation of the matters related to the various bankruptcy proceedings and securities proceedings will serve the interests of all parties and lead to an expeditious resolution. Moreover, consolidation would minimize the possibility of conflicting outcomes.

residing in Idaho are outside the subpoena power of this court. *See also*, *Zazzali*, 852 F. Supp. 2d at 451. Here, where non-party witnesses are beyond the court's subpoena power and ongoing proceedings in the District of Idaho are likely to require overlapping relevant parties, this factor weighs in favor of transfer.[12]

### 6. Location of books and records

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in an alternative forum)." *Jumara*, 55 F.3d at 879. The parties agree that this factor is neutral.

### ii. Public interest factors

### 1. Practical considerations

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. One such consideration is the existence of related lawsuits in the district court. *Smart Audio*, 910 F. Supp. 2d at 733.

Multiple related cases are currently pending in the Idaho District Court, some of which were transferred there by this court and the Bankruptcy Court. On March 27, 2012, Chief Judge Stark transferred *Zazzali v. Swenson*, Case No. 10-cv-0950 (LPS) (D. Del.), to the District of Idaho where it is currently pending as Case No. 12-cv-0224 (MJP) (D. Idaho). The court also recently transferred *Zazzali v. United States*, Misc. Case No. 11-mc-00091 (GMS), and *Zazzali v. Idaho*, Misc. Case No. 12-mc-00065 (GMS), to the District of Idaho where they are currently pending as Case Nos. 12-cv-0497 (MPS) and 13-cv-0502 (MPS), respectively. On February 8, 2013, the Bankruptcy Court transferred *Zazzali v. Swenson*, Case No. 10-54649 (PJW) (Bankr. D. Del.), to the District of Idaho where it is currently pending as Case No. 13-cv-0086 (MJP) (D.

---

[12] Trustees note that DBSI directors had refused to provide witness testimony on the basis of their Fifth Amendment rights. (Adv. Pro. No. 10-55592 (PJW), D.I. 139 at 26.) The courts points out that this argument is likely moot as a result of those witnesses' recent criminal convictions.

12

Idaho). Finally, on August 8, 2013, the Bankruptcy Court transferred another related case, *Zazzali v. Ellison*, Case No. 12-50761 (PJW) (Bankr. D. Del.), to the District of Idaho where it is currently pending as Case No. 13-cv-0350 (MJP) (D. Idaho). In addition to the cases that have already been transferred to the District of Idaho, the moving defendants' assert that the following other related proceedings are currently pending in the District of Idaho: (1) *Wavetronix v. Swenson*, Case No. 12-cv-0244-MJP (D. Idaho); (2) *Zazzali v. Ellison*, Case No. 12-cv-0284-MJP (D. Idaho); (3) *Zazzali v. Eide Baily LLP*, Case No. 12-cv-349-MJP (D. Idaho); *Kline Ent., Inc. v. Swenson*, Case No. 11-cv-0535-MJP (D. Idaho); and *United States v. Swenson*, Case No. 13-cv-0009-BLW (D. Idaho).

Trustees assert that practical considerations greatly favor maintaining the venue of the Adversary Proceedings in Delaware considering the Delaware Bankruptcy Court's extensive familiarities with the cases. (Adv. Pro. No. 10-55592 (PJW), D.I. 139 at 28.)

### 2. Relative administrative difficulty

The court also considers the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Neither party has offered any evidence that the District of Idaho is less congested than the District of Delaware.[13] Thus, this factor is neutral.

### 3. Local interest in the litigation

Finally, the transfer analysis requires that the court examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879.

Moving defendants argue that because many of the events giving rise to the Note Proceeding occurred in Idaho and involve the interpretation of Idaho law, Idaho has a strong

---

[13] The court takes notice of the fact that as of June 2014 the District of Delaware had the second highest number of weighted filings in the country whereas the District of Idaho has the forty-fifth highest number of weighted filings as ranked by district. *See* JNet, *Explanation of Selected Terms*, USCOURTS.GOV (last visited, September 25, 2014) ("[w]eighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions.").

13

interest in resolving the conflict at home. (Adv. Pro. No. 10-55592 (PJW), D.I. 127 at 14.) Trustees argue that since some of the victims of the fraud were Delaware citizens it cannot be said that Delaware lacks a significant interest in deciding this controversy. (Adv. Pro. No 10-55592 (PJW), D.I. 139 at 21-22.)

While several Delaware residents were injured by the alleged fraud, the fraud itself was perpetrated out of the Idaho headquarters by persons having no direct connections to Delaware. *See Swenson*, 852 F. Supp. 2d at 451. Furthermore, there are dozens of individual defendants residing outside of Delaware in the various Securities cases.

Accordingly, this factor weighs in favor of transfer.

### 4. Public policy

The court recognizes that the progression to date of the large DBSI bankruptcy matter in the Bankruptcy Court has involved an enormous expenditure of judicial resources by this District. This fact is not, however, dispositive. *See Zazzali*, 852 F. Supp. 2d at 453. The District of Idaho is uniquely positioned to rule on these matters on a consolidated basis in a manner that provides judicial efficiency and economies of scale for all parties.

Additionally, the Court recognizes that Idaho has a public policy interest in having this matter adjudicated in its courts because DBSI was an Idaho employer and resolution of this case may impact Idaho residents and the development of Idaho law. The Court also agrees with Defendants that discovery efforts can be coordinated by Plaintiff regardless of where the related cases are pending.

In sum, this factor is neutral.

14

### 5. Enforceability of the judgment

There is no suggestion that a judgment would be unenforceable in either the District of Delaware or the District of Idaho.

### 6. Familiarity with relevant state law

Although this Court is undoubtedly capable of applying Idaho state law to the Note Proceeding, as noted by Chief Judge Stark in transferring the Zazzali RICO Action to the District of Idaho, "a district judge in the District of Idaho undoubtedly has more frequent occasion to consider Idaho law," and, "[a]ccordingly, this factor weighs in favor of transfer." *Zazzali*, 852 F. Supp. at 453-54.

### c. Transfer analysis summary

Also supporting transfer is the tenuous relationship of this case to the District of Delaware. The only connection to this court is DBSI's decision to file for bankruptcy in Delaware, thus giving the district court subject matter jurisdiction over "related" proceedings. *See* 28 U.S.C. § 1334(a). While the court has both the jurisdiction and the competence to address the Idaho causes of action, it nonetheless deems it more appropriate that a member of the Idaho court system decide issues affecting the development of Idaho common law.

In sum, the only factor weighing against transfer is plaintiff's choice of venue, while, on the other hand, there are several compelling reasons to transfer this matter to the District of Idaho. As such, the court finds that defendants have met their burden of showing that the convenience of the parties and the interests of justice merit transfer. The court, therefore, shall grant defendants' motion to transfer.

## V. CONCLUSION

For the foregoing reasons, the court will grant the defendants' motions to with draw the Reference and to transfer venue to the District of Idaho.

Dated: September 25, 2014

_____
UNITED STATES DISTRICT JUDGE